UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD LEE GREEN, JR.,

                Petitioner,

v.

GARY MINIARD,

                Respondent.

_____/

Case No. 2:24-cv-11505

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER DENYING
PETITION FOR WRIT OF HABEAS CORPUS [1], MOTION FOR
RECONSIDERATION [13] AND MOTION FOR EXTENSION OF TIME [14]**

Edward Lee Green, Jr., confined at the Cooper Street Correctional Facility in Jackson, Michigan, petitioned for a writ of habeas corpus under 28 U.S.C. § 2254. ECF No. 1. Green, proceeding pro se, challenged his conviction for two counts of first-degree home invasion pursuant to Mich. Comp. Laws § 750.110a(2). For the following reasons, the Court will deny Green's petition for a writ of habeas corpus. The Court will also deny Green's motion for reconsideration of the order denying appointment of counsel, ECF No. 13, and motion to extend time to reply, ECF No. 14, as moot.

## BACKGROUND

Green's convictions arose from two home invasions in St. Clair County, Michigan in 2019. The material facts from Green's convictions are set out in the Michigan Court of Appeals' opinion in his case. The facts as stated in that opinion are presumed to be correct on habeas review. *See* 28 U.S.C. § 2254(e)(1); *Moore v.*

1

*Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013). The Michigan Court of Appeals set out

the following facts:

> This appeal arises from two convictions of home invasion. The first conviction involved an alleged home invasion that occurred on July 22, 2019, at the home of George Mayer. Mayer stated that he was awoken that morning at around 4:30 a.m. when his dog started growling "as if she heard something outside," but he then went back to sleep.
>
> St. Clair County Sherriff's Department Deputy Chris Roehl, received a call early the same morning concerning a suspicious car left running in someone's driveway. Upon arriving at the residence of the caller, Deputy Roehl discovered a silver Chrysler 300 belonging to defendant sitting in the driveway with the lights on, the driver's-side door open, and the engine running. No keys were inside the car and no one else was around. Deputy Roehl stated that the homeowner who called about the car did not know whose it was or how it got there.
>
> In the back seat of defendant's car, Deputy Roehl found a black fanny pack containing Mayer's identification, credit cards, and checks. According to Mayer, he had left the fanny pack on the armrest of his couch in his living room—roughly an arm's-length away from his front door—when he went to bed the night before. Mayer testified that he had closed and locked his door before he went to sleep. When Deputy Roehl arrived at Mayer's home to return the fanny pack later in the morning of July 22, 2019, it was also discovered that Mayer's screen door had been cut open at some point during the night before. Mayer testified that his screen was not cut when he went to bed on July 21, 2019.
>
> Deputy Roehl also received a second call on the morning of July 22, 2019, regarding a suspicious person in the yard of Autumn LaCroix, whose home was across the street from defendant's abandoned vehicle. LaCroix testified that shortly after 5:00 a.m. that morning, after her boyfriend left for work, she was alerted by her home security system of movement near her garage. Live security footage from outside of her house showed someone in the driveway looking through LaCroix's living room window. LaCroix then activated a loud alarm through the security system, at which point she saw the person outside run away from her home and across her front yard.
>
> Defendant was eventually located later that morning by St. Clair County Sherriff's Department Deputy Gil Sanchez. Defendant was found walking alone on a nature trail and wearing all black, which

2

Deputy Sanchez described as "a little bit out of the ordinary for people exercising or hiking on the trail". Deputy Roehl noted that the clothing was similar to the clothing worn by the suspicious person in LaCroix's security footage. When Deputy Sanchez asked defendant about the abandoned vehicle, defendant admitted it was his vehicle, but he stated that his brother had borrowed the car and defendant asserted he had been with his girlfriend the night before.

Defendant's second conviction also involved an alleged home invasion, this one occurring between August 2 and 3, 2019, at the home of Leigh Jewell. Jewell testified that, on the evening of August 2, 2019, she went to sleep at approximately 11:30 p.m., leaving her purse on the kitchen table overnight. The next morning, she discovered that the purse was missing. According to Jewell, the windows and doors were all closed when she went to bed, but the kitchen window near the purse was left unlocked and could be opened from outside. Jewell stated that the purse contained, among other valuables, a silver coin that once belonged to her grandfather. Jewell eventually filed a police report regarding the missing property.

St. Clair County Sherriff's Department Detective Chris Schwartzkopf was charge of investigating the case. He testified that he discovered that defendant pawned a coin matching the coin Jewell described, and Jewell confirmed that it was indeed the coin from her purse. With this information, defendant was arrested for both the July 2019 and August 2019 home invasions. After the arrest, Detective Schwartzkopf interviewed defendant regarding these incidents. During the interview, defendant stated that an unidentified man named Robert had instructed him to park in the driveway where his car was found on July 22, 2019, and that person left Mayer's fanny pack in the vehicle. Defendant stated that he did not know this individual, but that defendant offered to give him a ride from a nearby gas station in exchange for $20. According to defendant, this all occurred after he ended his shift at a restaurant at around 2:00 a.m. However, evidence at trial indicated that defendant's employment actually ended in early June 2019, well before this incident.

When asked about his connection to the August 2-3, 2019 home invasion, defendant stated that, on August 3, 2019, he agreed to drive a girl he just met that same day to the pawn shop. Defendant said the girl's name was Melody, but he did not know her last name, nor could he provide any additional identifying information. According to defendant, Melody was the one attempting to pawn Jewell's silver coin, and he only put his information down for the transaction because Melody did not have the required identification.

3

> Detective Schwartzkopf also testified about a recorded jail phone call between defendant and his girlfriend that took place shortly after the interview, which was admitted at trial. During this call, defendant mentioned that he went to the pawn shop. Then they discussed how defendant was doing and what he expected was going to happen. Defendant repeatedly stated that "it is what it is," but stressed his view that the evidence in his case only established that he possessed stolen property, not home invasion.
>
> A pawn shop employee also identified defendant as the person who pawned the silver coin. She was unsure whether anyone else accompanied him. Furthermore, trial testimony also established the locations of and relative distance between these events. Specifically, the location where defendant's vehicle was found and LaCroix's home was approximately 3 ½ miles from Mayer's home, Mayer's home was approximately 4 miles from Jewell's home, and the trail where defendant was found after the first home invasion was approximately 4 miles from defendant's abandoned car and LaCroix's home. The jury ultimately convicted defendant on both counts of home invasion.

*People v. Green*, No. 355619, 2022 WL 258284, at *1–2 (Mich. Ct. App. Jan. 27, 2022).

On September 16, 2020, a jury convicted Green of two counts first-degree home invasion. ECF No. 1, PageID.1–2. The trial court sentenced him as a fourth offense habitual offender to ten to thirty years' imprisonment. *Id.* Green directly appealed his convictions in the Michigan Court of Appeals. *Green*, 2022 WL 258284. Through counsel, he raised two claims concerning prosecutorial misconduct and ineffective assistance of trial counsel. *Id.* at *2, *5. Green also submitted a pro se brief pursuant to Michigan Supreme Court Administrative Order No. 2004–6, Standard 4, which raised a sufficiency-of-the-evidence claim and an alternative due process claim. *Id.* at *1. On January 27, 2022, the court of appeals affirmed his convictions and sentence. *Id.* at *9. Green then filed an application for leave to appeal in the Michigan Supreme Court. On October 4, 2022, the Michigan Supreme Court denied the application on

the basis that it was not persuaded that the questions presented should be reviewed. *People v. Green*, 510 Mich. 948 (2022).

Green subsequently filed a motion for relief from judgment in the trial court pursuant to Michigan Court Rule 6.500 and raised additional claims that are not the subject of the present petition. On April 11, 2024, the trial court denied the motion for relief from judgment on the following grounds: Mich Ct. R. 6.508(D)(2), Mich Ct. R. 6.508(D)(3), and for lack of merit. ECF No. 7-12, PageID.774–776. Green did not appeal the trial court's denial of his motion for relief from judgment.

On June 10, 2024, Green filed the present habeas petition. ECF No. 1. The Court understands that the petition raises the following claims:

I.   The prosecution appealed to the sympathy of the jury and shifted the burden of proof. As a result, the prosecutor engaged in misconduct and deprived petitioner Green of his due process rights to a fundamental fair trial under the Fifth and Fourteenth Amendments; in the alternative, petitioner Green was denied the effective assistance of trial counsel under the Sixth Amendment.

II.  There was insufficient evidence to support petitioner's conviction for first degree home invasion.

*See* ECF No. 1, PageID.23.

On December 10, 2024, Respondent responded to the petition and contended that Green's prosecutorial misconduct claim is procedurally barred, and that both claims lack merit. ECF No. 6. Green filed a reply. ECF No. 15.

**LEGAL STANDARD**

Section 2254(d) of Title 28, as amended by the AEDPA, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is "contrary to" clearly established federal law if the state court: (1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or (2) confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" the Supreme Court's. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

An "unreasonable application" occurs when "a state-court decision unreasonably applies [Supreme Court precedent] to the facts of a prisoner's case." *Id.* at 409. A federal court may not "issue the [habeas] writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. The state court must instead have behaved unreasonably. *Id.* Thus, a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

6

## DISCUSSION

### I.   Procedural Default

Although Respondent argued that Green procedurally defaulted his prosecutorial misconduct claim, the Court is not obligated to address that defense because procedural default is not a jurisdictional bar to review of the merits. *Smith v. Nagy*, 962 F.3d 192, 207 (6th Cir. 2020); *Trest v. Cain*, 522 U.S. 87, 89 (1997)); *see also Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)) ("[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits."). The Sixth Circuit notes its own decisions "may sometimes reach the merits of a petitioner's claim, particularly when the merits are easily resolvable against the petitioner while the procedural issues are complicated." *Smith*, 962 F.3d at 207 (citing *Lambrix*, 520 U.S. at 525). The procedural default analysis will not affect the outcome of this case, and it is more efficient for the Court to proceed directly to the merits of Green's claim.

### II.   Prosecutorial Misconduct

In his first claim, Green asserted that the prosecutor violated his due process rights. ECF No. 1, PageID. 17. First, Green argued that the prosecutor appealed to the sympathies of the jury by highlighting the sentimental value of the silver coin stolen from Leigh Jewell's purse. *Id.* Second, Green contended that the prosecutor improperly shifted the burden of proof by arguing that Green's failure to assert his innocence after his arrest was evidence of his guilt. *Id.* at PageID.18–19. Lastly, he

brought a related ineffective assistance claim for his attorney's failure to object to the prosecutor's conduct. *Id.* at 17–19.

For a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In evaluating the impact of the prosecutor's misconduct, a court should consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner. *See United States v. Young*, 470 U.S. 1, 11–12 (1985). The Supreme Court has described the *Darden* standard as "a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting *Yarborough*, 541 U.S. at 664). The *Parker* Court rejected an attempt to graft any additional requirements on the "very general" *Darden* standard. *Id.* "Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).

Indeed, "the Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily

imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 645). Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker*, 567 U.S. at 47 (internal quotation marks omitted).

*A. Appeal to Jury's Sympathy*

In the first portion of his claim, Green asserted that the prosecutor violated his due process rights by repeatedly eliciting testimony concerning the sentimental value of the coin Green stole and pawned. The Michigan Court of Appeals rejected this claim under the plain error standard because Green failed to object to the prosecutor's questions, stating in relevant part:

> We conclude that this testimony did not amount to an improper attempt by the prosecutor to evoke the jury's sympathy. While overly emphasizing the sentimentality of stolen property can in some instances constitute improper argument, here the prosecutor's explicit comments about the coin's sentimental value were limited and not a blatant appeal to jurors' sympathies. Compare *People v Watson*, 245 Mich App 572, 591-592; 629 NW2d 411 (2001) (isolated commentary that "[the defendant] did something to [the victim] that no one should do to any other human being" and that "[h]e treated her in a way that no animal should be treated" was not improper and "was not so inflammatory as to prejudice" the defendant), with *People v Dalessandro*, 165 Mich App 569, 581; 419 NW2d 609 (1988), (concluding that it was improper for the prosecutor to constantly refer to "the poor innocent baby" because such statements "were obviously intended to elicit just that emotional response" and evoke jurors' sympathies).

> Additionally, much of this allegedly faulty questioning, specifically that relating to the coin's shine, type, and year, was required to properly identify the coin and clearly not intended to evoke jurors' sympathies. Regardless of whether the more general questioning concerning the

9

> coin's background may have incidentally invited sympathy, we conclude that this was for the proper purpose of identifying the coin and Jewell's credibility on the matter.

*Green*, 2022 WL 258284, at *4 (alterations in original).

The Michigan Court of Appeals' decision was not an unreasonable application of federal law or clearly-established Supreme Court precedent. A claim that the prosecutor appealed to the sympathy of the jury may be classified as a "civic duty" argument. With regards to civic or societal duty arguments, the Sixth Circuit has noted that, "unless calculated to incite the passions and prejudices of the jurors, appeals to the jury to act as the community conscience are not per se impermissible." *Byrd v. Collins*, 209 F.3d at 486, 539 (6th Cir. 2000) (citation modified). Likewise, "[n]othing prevents the government from appealing to the jurors' sense of justice." *United States v. Hall*, 979 F.3d 1107, 1122 (6th Cir. 2020) (alteration in original).

Here, Leigh Jewell testified that the silver half-dollar coin carried great sentimental value because it belonged to her grandfather and was given to her by her late grandmother. ECF No. 7-6, PageID.502–503. The coin's year—1945—was the year Jewell's grandfather was discharged from his military service in World War II. *Id*. It is inferable from the state-court record that the coin's sentimentality helped Jewell positively identify it after Green pawned it. The prosecutor highlighted the coin's sentimentality, not to incite the jury's passions and prejudices, but to explain Jewell's ability to identify the coin as her own. *See id*. at PageID.505 (asking the witness, after she recounted details about the coin, "[s]o, do you know for sure that this coin was in your purse on that day, August 2nd and 3rd?"). And the trial court

10

instructed the jury that they were not to let sympathy or prejudice influence their decision. ECF No. 7-7, PageID.641: *see Cameron v. Pitcher*, No. 99-CV-74906, 2001 WL 85893, *10 (E.D. Mich. Jan. 4, 2001). Jurors are generally presumed to follow the trial court's instructions. *See Penry v. Johnson*, 532 U.S. 782, 799 (2001). For these reasons, Green's due process rights were not violated by the prosecutor's emphasis on the coin's sentimental value.

### B. Burden of Proof

Green next argued that the prosecutor shifted the burden of proof by commenting on his failure to advocate his innocence during a recorded jail call. ECF No. 1, PageID.19. The Michigan Court of Appeals rejected this claim, stating in relevant part:

> In the instant case, it is undisputed that defendant waived his Fifth Amendment right to silence when he voluntarily responded to questioning after being given *Miranda* warnings during the interview with Detective Schwartzkopf. Furthermore, even discounting defendant's waiver, his right to silence would not extend to the phone call with his girlfriend because he was not subject to custodial interrogation at the time. *See Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966) (a defendant's *Miranda* rights are only implicated when he or she is subjected to a custodial interrogation, which means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way") (emphasis added); *People v Cheatham*, 453 Mich 1, 11; 551 NW2d 355 (1996) ("*Miranda* protects defendants against governmental coercion leading them to surrender rights protected by the Fifth Amendment; it goes no further than that.") (cleaned up; emphasis added).
>
> Here, although he was in custody at the time, defendant's silence occurred after he waived his right to silence and during a conversation with his girlfriend—not under questioning from law enforcement officers. Applying the aforementioned legal principles to these facts, it was constitutionally proper for the prosecutor to rely on defendant's

silence and lack of denials as substantive evidence of guilt. Therefore, no prosecutorial misconduct occurred.

Additionally, even assuming arguendo that these questions and comments did constitute an improper attempt to shift the burden of proof, there was no prejudice to defendant. As noted, jurors are presumed to follow their instructions. See *Stevens*, 498 Mich at 177. In this case, the trial court instructed the jury that defendant was entitled to the presumption of innocence, that the burden of proof was solely on the prosecutor, and that the lawyers' statements, questions to the witnesses, and arguments were not evidence. Therefore, defendant has not established that he is entitled to reversal.

*Green*, 2022 WL 258284, at *6.

The Michigan Court of Appeals' decision was not an unreasonable application of federal law or clearly-established Supreme Court precedent. It is well-settled that a prosecutor may not shift the burden of proof to the defendant, *Patterson v. New York*, 432 U.S. 197, 215 (1977), or imply that the defendant has "any obligation to produce evidence to prove his innocence," *Joseph v. Coyle*, 469 F.3d 441, 474 (6th Cir. 2006) (quoting *United States v. Clark*, 982 F.2d 965, 968–969 (6th Cir. 1993)). Nonetheless, prosecutors "must be given leeway to argue reasonable inferences from the evidence." *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000) (quoting *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996)).

Here, the prosecutor questioned Detective Chris Schwartzkopf about Green's telephone call to his girlfriend Yvette Moore. ECF No. 7-7, PageID.563, 582. The prosecutor asked if during the recording, Green "tell[s] her that he did not break into those houses?" Schwartzkopf answered, "No." *Id*. at PageID.582. The prosecutor then asked, "Did he tell her that you have the wrong guy [sic] he did not commit the home invasions?" Schwartzkopf again replied, "No." *Id*. During closing argument, the

12

prosecutor argued that the jury could infer substantive evidence of guilt from Green's omissions. Specifically, he stated: "[t]hink about what he does not say. The Defendant traumatized a lot of people with these home invasions and what he does not say to the detective is I didn't do it. What he does not say to his girlfriend is I didn't do it. Why doesn't he say that? Because he did it." *Id.* at PageID.618. Green does not dispute that the telephone call was properly admitted, nor does he dispute that he waived his rights under the Fifth Amendment during his custodial interview. The prosecutor is permitted to argue reasonable inferences from the evidence presented at trial. *Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 852 (6th Cir. 2017). Therefore, the prosecutor did not impermissibly shift the burden to Green by arguing that his omissions suggested evidence of guilt.

Furthermore, even if any shift in the burden of proof occurred, it was cured by the trial court's jury instructions. The trial court instructed the jury that it "must start with the presumption that the Defendant is innocent." *Id.* at PageID.641. The court further instructed that the prosecution bears the burden of proving each element of the crime beyond a reasonable doubt and that lawyers' statements and arguments are not evidence. *Id.* at PageID.643, 648. As noted above, jurors are presumed to follow the trial court's instructions. *See Penry*, 532 U.S. at 799. Therefore, Green has not shown entitlement to relief on this issue.

### C. Ineffective Assistance of Trial Counsel

Green also brought a related claim that defense counsel was ineffective for failing to object to the prosecutor's remarks. To prevail on his ineffective assistance

13

of counsel claim, a habeas petitioner normally must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) "that counsel's performance was deficient," and (2) that "the deficient performance prejudiced the defense." 466 U.S. at 687.

The Michigan Court of Appeals rejected the ineffective assistance of counsel arguments, concluding that "no misconduct occurred that would have warranted an objection by defense counsel." *Green*, 2022 WL 258284, at *7. The court's conclusion was entirely consistent with *Strickland*. As discussed above, the Court determined that Green's prosecutorial misconduct claims lack merit. The Court, therefore, cannot agree with Green that counsel's failure to object to any alleged prosecutorial misconduct prejudiced his defense in any way. *See Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008) ("No prejudice flows from the failure to raise a meritless claim."); *see also Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) (noting that "omitting meritless arguments is neither professionally unreasonable nor prejudicial"). Green, therefore, is not entitled to relief with respect to his ineffective assistance of trial counsel claim.

14

III.   Sufficiency of the Evidence

Last, Green argued that his convictions of two counts of first-degree home invasion were based on insufficient evidence. The Michigan Court of Appeals rejected this claim, stating:

> Viewing the evidence in a light most favorable to the prosecution, a reasonable juror could find that each element of defendant's crimes were established beyond a reasonable doubt. First, it is undisputed that both Mayer and Jewell were present in their homes when the alleged home invasions and underlying thefts occurred. Moreover, both individuals were also missing property that was taken from inside their homes, with Mayer's screen door actually cut open for access and Jewell's purse sitting near a closed but unlocked window. Although no witnesses definitively placed defendant at the scene of the two home invasions, sufficient circumstantial evidence existed for jurors to infer this fact.

> Critically, the two home invasions occurred in the same general area approximately 4 miles apart, and defendant was discovered walking a trail near the location of the first home invasion later that morning. Defendant's car was also discovered, with Mayer's stolen property inside, across the street from where a suspicious person matching defendant's description was seen casing houses. Additionally, evidence established that defendant was the individual who pawned Jewell's stolen coin at the pawn shop. Furthermore, defendant's purported explanations for these circumstances were inconsistent to say the least. Defendant initially told officers that his brother was using his car at the time of the first alleged home invasion. However, when he was later questioned by a detective, he changed his story and placed blame on an unknown individual named Robert. Similarly, defendant alleged that he was only on record for pawning Jewell's coin because the actual thief, "Melody," lacked proper identification. But there is no evidence that this person even existed apart from defendant's statements, and he could not provide a last name or any identifying information. Finally, defendant claimed he had been working late at a local restaurant on the evening of the first home invasion, but the record reveals that defendant's employment at this restaurant had stopped well before this incident. Accordingly, a reasonable juror could have reasonably rejected defendant's inconsistent and vague explanations.

> From this evidence, it was reasonable for jurors to infer that defendant was responsible for breaking and entering and stealing from both

15

Mayer's and Jewell's homes. Therefore, we conclude that there was sufficient evidence to "justify a rational trier of fact's conclusion that the evidence proved the essential elements of the crime beyond a reasonable doubt." *Solloway*, 316 Mich App 174 at 180.

*Green*, 2022 WL 258284, at \*8.

The Michigan Court of Appeals' decision was not an unreasonable application of federal law or clearly-established Supreme Court precedent. The federal Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The question on a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "The *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16). In a habeas case, the Court views this standard through the framework of 28 U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002).

Thus, under the AEDPA, challenges to the sufficiency of the evidence must survive "two layers of deference to groups who might view facts differently" than a federal court on habeas review—the factfinder at trial and the state appellate court—as long as their determinations were reasonable. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). "[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos v. Smith*, 565

16

U.S. 1, 2 (2011) (per curiam). "A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). The "mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Id.* at 788–89. Further, "[c]ircumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence" at trial "to exclude every reasonable hypothesis except that of guilt." *Johnson v. Coyle*, 200 F. 3d 987, 992 (6th Cir. 2000) (citation omitted).

To support the conviction of first-degree home invasion, a prosecutor must establish the following elements beyond a reasonable doubt:

> (1) the defendant either breaks and enters a dwelling or enters a dwelling without permission; (2) the defendant either intends when entering to commit a felony, larceny, or assault in the dwelling or at any time while entering, present in, or exiting the dwelling actually commits a felony, larceny, or assault; and (3) while the defendant is entering, present in, or exiting the dwelling, either (a) the defendant is armed with a dangerous weapon, or (b) another person is lawfully present in the dwelling.

*Green,* 2022 WL 258284, at *8 (quoting *People v. Bush*, 315 Mich. App. 237, 244 (2016)); *see also* Mich. Comp. Laws § 750.110a(2).

Here, the state-court record establishes each of the elements of the crime. First, witnesses George Mayer and Leigh Jewell testified that Green did not have permission to enter their homes. ECF No. 7-6, PageID.474, 507. Mayer testified that the screen to his door had been cut vertically and horizontally. *Id.* at PageID.474. Jewell testified that the window near her purse could be opened from the outside and was unlocked. *Id.* at PageID.501. Second, the prosecutor established that a purse was

17

removed from Jewell's home and that a fanny pack had been removed from Mayer's home. *Id*. at PageID.471–474, 506. Last, both Mayer and Jewell were present when Green broke into and entered their homes. *Id*. at PageID.473, 499.

Additionally, the record establishes that Green was the person who committed the home invasions. As noted by the Michigan Court of Appeals, each of the home invasions occurred in the "same general area approximately 4 miles apart." *Green*, 2022 WL 258248, *8. Deputy Roehl testified that a car registered under Green's name was found parked on a street three miles from Mayer's home. ECF No. 7-6, PageID.452, 455. The driver's door was open, and the car was running. *Id*. at PageID.440. A black fanny pack with Mayer's identification, credit cards, and checks was found inside the car. *Id*. at PageID.444. While Jewell's purse was not recovered, testimony established that Green had pawned the silver coin that was in her purse when it was stolen. *Id*. at PageID.525, 501–502. Under these facts, the jury had sufficient evidence to convict Green of two counts of home invasions. He is not entitled to habeas relief on this claim.

## CONCLUSION

Because the Court decided that Green's claims lack merit, his motion for reconsideration of the order denying appointment of counsel, ECF No. 13, is denied. Additionally, because Green could not have raised new arguments in a reply, his motion to extend time to file a reply, ECF No. 14, is denied as moot.

Under 28 U.S.C. § 2253, before a petitioner may appeal a decision of the Court, the Court must determine if petitioner is entitled to a certificate of appealability. 28

18

U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). The Court must either issue a certificate indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b). A certificate may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Cases in the United States District Courts.

After conducting the required inquiry, and for the reasons stated in the order above, Green did not made a substantial showing of the denial of a constitutional right. Accordingly, the Court will not grant a certificate of appealability. The Court will also deny Green leave to appeal in forma pauperis, because the appeal would be frivolous. *See Hence v. Smith*, 49 F. Supp. 2d 547, 549 (E.D. Mich. 1999).

### ORDER

**WHEREFORE**, it is hereby **ORDERED** that the petition for a writ of habeas corpus [1] is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability and leave to appeal in forma pauperis are **DENIED**.

**IT IS FURTHER ORDERED** that the motions for reconsideration [13] is

**DENIED** and the motion to extend time to reply [14] is **DENIED AS MOOT**.

This is a final order that closes the case.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: March 30, 2026

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 30, 2026, by electronic and/or ordinary mail.

s/ R. Loury
Case Manager

20